J-A26017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PROSPECT CCMC, L.L.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BERKSHIRE HATHAWAY HOMESTATE | : | No. 839 EDA 2022 |
| INSURANCE CO. | : | |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2018-003234

BEFORE:  BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 02, 2023**

Prospect CCMC, L.L.C. (Crozer) appeals an order of the Court of Common Pleas of Delaware County (trial court) granting summary judgment in favor of Berkshire Hathaway Homestate Insurance Co. (Berkshire).  The trial court had determined that Crozer failed to raise a genuine issue of material fact as to Berkshire's contractual obligation to pay Crozer 90% of the costs of medical treatment afforded to Berkshire's insured.  Crozer argues that the trial court erred in making that finding because Crozer produced competent evidence of its contractual entitlement to those funds under Pennsylvania law.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

In 2017, Berkshire's insured, M.M., was involved in a work-related accident in New Jersey, and she received treatment at the burn unit of the Crozer Chester Medical Center in Upland, Pennsylvania. M.M. then filed an employee claim petition in the workers' compensation division of the state of New Jersey. Berkshire was the insurance carrier for M.M.'s employer at the time of the accident, and an answer to M.M.'s claim petition was submitted on Berkshire's behalf. Notice was sent by the New Jersey Workers' Compensation Court both to Berkshire and Crozer, advising that a pretrial hearing would be held on June 13, 2018, regarding M.M.'s claim petition for benefits.

The record is silent as to whether Crozer ever availed itself of the New Jersey Workers' Compensation system to recover the cost of M.M.'s treatment. However, what is certain is that while M.M.'s claim petition was in New Jersey, Crozer filed a complaint in the trial court, alleging that the total cost of M.M.'s treatment was $256,830, and that Crozer was contractually entitled to 90% of that amount from Berkshire. Because Crozer had only been paid $30,175.58, it asserted one count of breach of contract against Berkshire, seeking the remaining balance of $200,971.42. In subsequent pleadings, Crozer clarified that its breach of contract claim was predicated on the theory that Crozer was a third-party beneficiary of a contract entered into by Berkshire.

The purported contract binding Berkshire to pay Crozer 90% of the cost of M.M.'s medical care was a "AWCA Preferred Provider Organization agreement" (Aetna PPO). **See** Complaint, 4/30/2018, at ¶ 4. Crozer supplied only an "amendment" to this agreement, which relates to Crozer's right to recover the costs of medical treatment afforded to injured workers receiving workers' compensation benefits in Pennsylvania. The amendment's provisions have been copied in pertinent part below:

> This Amendment is made as of July 1, 2006 (Effective Date), between **Aetna Workers' Comp Access, LLC**, on behalf of itself and its Affiliates (hereinafter referred to as "Company") and [Crozer].
>
> Whereas, the parties have entered into a Managed Care ("Agreement") to provide health care services to Members;
>
> Whereas, the parties wish to amend the Agreement in order to **participate in the Aetna Workers' Comp Access program** and agree to revise the Compensation Schedule as provided herein;
>
> Now, Therefore, in consideration of the mutual promises and undertakings contained herein, the parties agree to be legally bound as follows:
>
> 1. The Schedule of the Agreement is hereby amended to update the compensation for such services as set forth as follows:
>
> **For Services rendered to a [workers' compensation] Claimant, [Crozer] will be paid:**
>
> • 3 percent discount from the Commonwealth's fee schedule, 97% of the state fee schedule.
>
> • **90% of charges for Burn and Trauma cases** (Burn case will be identified with Rev code 0207 which is the revenue code we use for services rendered in the Burn Center).

> • **All payers accessing [Crozer] through [Aetna] will comply with the rules and regulations of the Commonwealth of PA for rates, timeliness of payments, disputes etc.**

Brief in Support of Crozer's Reply to Berkshire's Second Motion for Summary Judgment, Exhibit A, at 1-2 (emphases added).

To establish Berkshire's obligation to abide by the terms of the above agreement, Crozer attached to its complaint a copy of Berkshire's internal "Review Analysis," which had been created during the processing of the subject claims for M.M. *Id*. This non-final version of the Review Analysis referred to Crozer's "Aetna contract" and a "PPO reduction" that Berkshire had initially applied to M.M.'s medical bills for services rendered by Crozer. *Id*.

The Review Analysis indicated that Crozer was owed $231,147 "in accordance with [Crozer's] Aetna contract." This amount corresponded with the figure Crozer claims was due based on calculating 90% of M.M.'s medical bills. Berkshire would later override this Review Analysis by omitting reference to the Aetna contract, resulting in the payment of $30,175.58 to Crozer.

In addition to Berkshire's own internal acknowledgment of the Aetna PPO, Crozer sought to show that Berkshire was bound by the agreement through a contract between its affiliate, Oak River, and the medical bill servicing company, Medata, which, in turn, had contracted with Aetna. Crozer maintained that since it had contracted with Aetna to receive the benefit of the Aetna PPO and Berkshire had contracted to apply Aetna rates through its

- 4 -

affiliate and bill servicer, Berkshire had breached its obligation to pay Crozer the full Aetna PPO amount as to the medical services provided to M.M.

In its preliminary objections, Berkshire challenged the trial court's jurisdiction over a dispute concerning a New Jersey workers' compensation claim and objection on that ground was overruled. ***See*** Berkshire Preliminary Objections, 6/8/2018, at 1-5; Trial Court Order, 8/3/2018, at 1.

As to the merit of breach of contract claim, Berkshire disputed that it was bound to pay Crozer pursuant to the Aetna PPO. The Assistant Vice President of Medical Management, Theresa Kelly, testified in an affidavit that Berkshire was not a party to that agreement. ***See*** Affidavit of Theresa Kelly, 5/15/2019, at ¶¶ 8-9. Kelly also averred that Berkshire's reference to the Aetna PPO in the non-final Review Analysis was simply an error by Berkshire which was later corrected. ***See id***. at ¶ 11.

The medical bills review manager who processed M.M.'s hospital charges, Jade Uhl, further explained Berkshire's handling of the claim. ***See*** Deposition of Jade Uhl, 12/14/2022, at pp. 112-14. She testified that Berkshire had contracted with Medata to do its medical bill pricing, and that Medata would reprice hospital bills pursuant to a negotiated rate stipulated in the Aetna PPO where applicable. ***See*** Deposition of Jade Uhl, 12/14/2021, at pp. 76, 82. After M.M. was discharged in this case, Medata's software had initially calculated that Crozer was entitled to 90% of the hospital charges for M.M.'s treatment pursuant to the Aetna PPO. ***See id***. at pp. 83-84.

When reviewing the pricing of M.M.'s medical bill, however, Uhl determined that Medata's calculation (using the Aetna PPO rate) was an "error" because Berkshire had "no [applicable] contract with [Crozer] or Aetna, so [Berkshire] had no requirement of sending it to that PPO for repricing." *Id*. at p. 106. Uhl overrode the Aetna PPO amount and recalculated the sum payable to Crozer by applying a multiple of 1.5 to the Medicare reimbursement rate for a New Jersey workers' compensation claim, totaling $30,175.58.

Theresa Kelly and Jade Uhl attributed the miscalculation in Berkshire's Review Analysis to the automated Medata billing application. They both explained that Medata had generated the initial figures for the claim as if the jurisdiction was the location of M.M.'s treatment (Pennsylvania) rather than the location of M.M.'s work-related accident and resulting claim for workers' compensation benefits (New Jersey). *See* Deposition of Theresa Kelly, at pp. 19; Deposition of Jade Uhl, at pp. 43-45.

Uhl testified that a claim within the jurisdiction of Pennsylvania would be priced in the Medata system such that a medical provider would be entitled to 90% of the cost of providing acute care to an employee in a burn unit. However, claims within the jurisdiction of New Jersey would be processed under a completely different fee schedule. *See* Deposition of Jade Uhl, at pp. 43-45; *see also* Affidavit of Theresa Kelly, 5/15/2019, at ¶ 5 (averring that Berkshire supplies workers' compensation insurance policies "to employers

who provide benefits to their employees pursuant to the New Jersey Work[men's] Compensation Act").

Kelly further stated that Berkshire had recalculated the amount due to Crozer as a claim in the jurisdiction of New Jersey and, as such, Crozer would be paid "according to New Jersey rules," which mandate payment in an amount that would be "reasonable" and based upon the "usual fees and charges which prevail in the same community." *Id*. at pp. 110-11. In New Jersey, there was no contract, rule or regulation – analogous to those in Pennsylvania – which guaranteed medical providers 90% or more of the cost of burn unit care.

In Berkshire's second motion for summary judgment,[1] it asserted that Crozer had failed to show that Berkshire and Crozer had contracted for Crozer to receive the rate set forth in the Aetna PPO. *See* Berkshire's Second Motion for Summary Judgment, 1/12/2021, at 8-9. The trial court granted Berkshire's summary judgment motion, agreeing with Berkshire that Crozer had failed to raise a raise a genuine issue of material fact as to whether there existed a contract that bound Berkshire to pay Crozer 90% of M.M.'s medical

---

[1] Berkshire's first summary judgment motion was denied without prejudice in 2019 so that the parties could continue with discovery. *See* Trial Court Order, 9/9/2019. Berkshire's second summary judgment motion was filed on January 12, 2022.

bills under that agreement. *See* Trial Court Order, 2/17/2022, at 1-2; Trial Court Opinion, 4/27/2022, at 5-8.

The trial court first found that Crozer could not establish the existence of a valid contract because it had not attached the Aetna PPO agreement to its complaint. Second, the trial court found that Crozer had failed to plead its third-party beneficiary status in the complaint, and this theory of recovery was not reasonably deducible because Crozer and Berkshire did not both appear as signatories in the same contract. Third, the trial court disregarded the contracts between Berkshire's affiliate and Aetna, reasoning that "parent corporations are not necessarily liable for acts of subsidiaries." *Id*. at 7.

Crozer timely appealed, raising the following issues in its brief:

1. Whether, by requiring that [Crozer] produce "compelling evidence" that it was a third-party beneficiary, the trial court used the wrong standard for deciding a motion for summary judgment.

2. Whether a material factual dispute exists as to whether [Crozer] was a third-party beneficiary of the Medata/Aetna contracts.

3. Whether the complaint properly pleads that [Crozer] was a third-party beneficiary of the Medata/Aetna contracts.

4. Whether [Crozer's] failure to attach the contracts to the complaint warrants summary judgment where [Berkshire] did not file preliminary objections and the contracts were produced in discovery.

Appellant's Brief, at 5 (suggested answers omitted, questions renumbered).

## II.

While we agree with the trial court that Crozer's breach of contract claim does not survive Berkshire's motion for summary judgment, we do so for a

reason different from those given by the trial court.[2]  What is dispositive in this appeal is that the employee, M.M., was injured on the job in *New Jersey*, and she filed a claim for workers' compensation benefits in that state.[3]  New Jersey, therefore, had jurisdiction over any dispute concerning Berkshire's payment of the hospital fees incurred by M.M. in Crozer's facility.  ***See*** N.J. Stat. § 34:15-15 ("Exclusive jurisdiction for any disputed medical charge arising from any claim for compensation for a work-related injury or illness shall be vested in the division."); ***see also*** 77 P.S. § 1 ("That this act shall be

---

[2] It is well established that this Court may uphold a trial court's order for any reason that is supported by the evidence of record.  ***See Moss Rose Mfg. Co. v. Foster***, 314 A.2d 25, 26 (Pa. Super. 1973) (*en banc*) (citation omitted) ("As an appellate court, we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court.").  Moreover, questions regarding jurisdiction to adjudicate a workers' compensation claim must be considered on appeal regardless of whether the issue was raised by the parties.  ***See Atkins v. W.C.A.B.***, 651 A.2d 694, 699 n. 3 (Pa. Cmwlth. 1994).

[3] In reviewing a grant of summary judgment, this Court's standard of review is *de novo* and our scope of review is plenary.  ***See Bourgeois v. Snow Time, Inc.***, 242 A.3d 637, 649–50 (Pa. 2020).  Summary judgment must be granted where "the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  ***Id***.  The party seeking summary judgment "has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party."  ***Id.***  Any doubt "as to the existence of a genuine issue of material fact against the moving party may grant summary judgment only where the right to such a judgment is clear and free from doubt.'"  ***Id***. (quoting ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007)).

called and cited as the [Pennsylvania] Workers' Compensation Act, and shall apply to all injuries occurring within this Commonwealth[.]").

The Aetna PPO "Amendment Page" shows that it was only intended to cover claims governed by the Pennsylvania Workers' Compensation Act. It provides that Crozer was to be enrolled in the "Aetna Workers' Compensation Access Program" in compliance with "the rules and regulations of the Commonwealth of Pennsylvania for rates, timeliness of payments, disputes etc." Under the Aetna PPO, the facility (Crozer) would be paid for services rendered to "a claimant" at a rate of "90% of charges for burn and trauma cases." This contract rate represented a negotiated reduction of the amount mandated by Pennsylvania law, which is "100% of usual and customary charges" for critical care in a burn unit. **See** 34 Pa. Code § 127.128(a). Reimbursement rates are calculated differently under New Jersey law, which does not guarantee payment of any specific percentage of charges for such care.[4]

---

[4] Unlike Pennsylvania, New Jersey does not mandate that burn units treating a worker for an acute injury must be paid 100% of the usual and customary charges. New Jersey's scheme provides generally, and without exempting burn unit care, that "[a]ll fees and other charges for such physicians' and surgeons' treatment and hospital treatment shall be reasonable and based upon the usual fees and charges which prevail in the same community for similar physicians', surgeons' and hospital services." N.J. Stat. § 34:15-15. There is nothing in the record from which it can be gleaned that the Aetna PPO was intended to cover analogous claims for burn unit care in New Jersey, a state which does not exempt burn unit care from price caps or guarantee 100% reimbursement to care providers.

Viewing the facts in the light most favorable to Crozer, summary judgment was properly granted to Berkshire because the record contains no evidence that would establish Pennsylvania's jurisdiction over M.M.'s underlying workers' compensation claim. The record instead shows that M.M. was injured in New Jersey, that a claim was properly filed for workers' compensation benefits in that state, and that the proceedings were pending there when Crozer filed its breach of contract claim against Berkshire in Pennsylvania.

The terms of the Aetna PPO did not alter New Jersey's exclusive jurisdiction over any dispute as to Berkshire's payment to Crozer. *See* N.J. Stat. § 34:15-15. At most, the Aetna PPO bound Crozer and Berkshire to follow the rules and regulations of Pennsylvania in an unspecified class of cases, but nothing in the Aetna PPO suggests that the parties intended for New Jersey workers' compensation claims to be governed by the rules and regulations of Pennsylvania. Even if the Aetna PPO contained such a provision, the dispute would still have to be litigated in New Jersey due to that state having exclusive jurisdiction over the underlying workers' compensation claim. *See id*.

While Berkshire initially determined that the Aetna PPO covered M.M.'s medical treatment, any resulting dispute of material fact as to the applicability of the contract would be irrelevant for jurisdictional purposes. The order granting summary judgment to Berkshire must, therefore, stand because

Crozer did not present any evidence that the trial court was authorized to adjudicate a dispute relating to New Jersey workers' compensation benefits. Having resolved this appeal on those grounds, it is unnecessary for this Court to address any other issues raised in the parties' briefs.

Order affirmed.

Judge King joins the memorandum.

Judge Bowes files a concurring memorandum.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/2/2023*